IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STACY STRANGE, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| OFFICER AVERY FREEMAN, et al., | : | No. 11-7911 |
|     Defendants. | : | |

## MEMORANDUM

Schiller, J.                                                                                                                                                           November 13, 2012

      According to Stacy Strange, her constitutional rights were violated by police officers when she tried to intervene in an altercation involving her family members that took place right outside of her window. The case was originally brought against Officers Avery Freeman, Luis Rodriguez, and William Swanson, as well as the City of Chester. The Court dismissed the claims against Officers Freeman and Rodriguez. Presently pending is the summary judgment motion of Officer Swanson and the City of Chester. For the reasons that follow, the Court grants the motion.

**I.**     **BACKGROUND**

      Around 1 a.m. on August 31, 2009, Strange heard a banging on the front door of her home. When she opened the door, her niece, Janay Bowers, and her daughter, Stacia Strange, were at the door. (Defs.' Mot. for Summ. J. Ex. F [Strange Dep.] at 14.) Janay was irate because she had been hit in the face with a stick and claimed that she was going to exact revenge upon the person who had hit her. (*Id.* at 18.) Janay grabbed a hammer from Strange's dining room and ran out the door. (*Id.*) Strange yelled at Janay to come back, ran upstairs to put clothes on, and told Stacia to remain downstairs. (*Id.*) Strange proceeded to the alley near her home to retrieve Janay, who was involved

in a fight outside. (*Id.* at 18-19.) Strange estimated that there were fifty or more people in the alley. (*Id.* at 19.) As Strange took the hammer from Janay, Officer Avery Freeman arrived on the scene in his police car. (*Id.* at 21.) Strange was attempting to get Janay and Stacia, who had left her home and was in the alley, to leave the scene and return to Strange's house. (*Id.* at 28, 48.) Janay ran towards Officer Freeman, who was standing in Strange's yard. (*Id.* at 30.) Officer Freeman grabbed Janay by the arm and Strange walked up to them and tried to explain that Janay was her niece, that she was trying to call Janay's mother, and that she was trying to get Janay to return to Strange's home. (*Id.*) As Strange was on a cell phone trying to call Janay's mother, she was tackled from behind and knocked to the ground. (*Id.* at 31-32, 46-47.) Despite Strange's protests that she did nothing wrong, she was handcuffed and cursed at by Officer William Swanson. (*Id.* at 33-34.) Officer Swanson then tasered Strange. (*Id.* at 34-36.)

Officer Swanson transported Strange to the police station. (*Id.* at 54.) Strange claims that at some point, Officer Swanson choked her in the back of the car while he was sitting on her lap and her hands were handcuffed behind her back. (*Id.* at 56-58.) Officer Swanson also threatened to kill her and refused to take her to a hospital when she requested medical care, telling Strange that "[she] could die on the seat for all he cared." (*Id.* at 57-58, 76.) After Officer Swanson transported Strange to the police station, she had no further contact with him. (*Id.* at 86.)

An arrest warrant sworn to by Officer Luis Rodriguez charged Strange with criminal conspiracy, simple assault, terroristic threats, ethnic intimidation, endangering the welfare of children, obstructing the administration of law or other governmental functions, resisting arrest, rioting with the intent to prevent or coerce official action, failure of disorderly person to disperse upon official order, disorderly conduct, obstructing a highway or other public passage, and

possessing an instrument of crime. (Defs.' Mot. for Summ. J. Ex. C [Arrest Warrant].) The arrest warrant included an affidavit of probable cause, also sworn to and signed by Officer Rodriguez, that lays out the basis for the charges contained in the arrest warrant. (*Id.*) Of course, the story contained in the affidavit of probable cause, as well as Swanson's deposition testimony, did not recount the vicious police misconduct that Strange attributes to Defendants, though Officer Swanson admits to having used his taser on Strange. (*Id.* Ex. G [Swanson Dep.] at 5, 50-53, 57, 68-71.) Ultimately, the case against Strange was dismissed. (*Id.* Ex. D [Police Report].)

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the admissible evidence fails to demonstrate a genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When the movant does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

Thereafter, the nonmoving party demonstrates a genuine issue of material fact if it provides evidence sufficient to allow a reasonable finder of fact to find in its favor at trial. *Anderson*, 477 U.S. at 248. In reviewing the record, a court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Prowel v. Wise Bus. Forms*, 32 F.3d 768, 777 (3d Cir. 2009). The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

## III. DISCUSSION

Strange filed her Complaint on December 30, 2011. She included seven counts: violation of her Fourth Amendment right to be secure in her person; false arrest and imprisonment under 42 U.S.C. § 1983; "deprivation of federally-protected rights"; a *Monell* claim against the City of Chester; assault and battery; malicious prosecution; and intentional infliction of emotional distress. On February 13, 2012, Defendants filed a motion to dismiss. On March 6, 2012, this Court issued a Memorandum addressing Defendants' motion to dismiss. The Court concluded that a number of Plaintiff's claim were time-barred. As a result of that Memorandum, the only claims remaining are the malicious prosecution and intentional infliction of emotional distress claims against Officer Swanson, and the *Monell* claim against the City of Chester. Defendants' summary judgment motion seeks to dismiss these remaining claims.

### A. Officer Swanson

To succeed on a claim for malicious prosecution under § 1983, the plaintiff must show: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005). The elements of a common law malicious prosecution claim under Pennsylvania law are similar, but the plaintiff is not required to show a deprivation of liberty consistent with the concept of a seizure. *See Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 791-92 (3d Cir. 2000). As a general matter, a malicious prosecution claim must proceed against a prosecutor, not a police officer, because it is the prosecutor who brings charges

4

against an individual. *Harris v. City of Phila.*, Civ. A. No. 97-3666, 1998 WL 481061, at *5 (E.D. Pa. Aug. 14, 1998). Thus, a police officer can be liable for malicious prosecution only if he or she provides false information to the prosecutor or prevents the prosecutor from making an informed decision about whether to file charges. *See Brockington v. City of Phila.*, 354 F. Supp. 2d 563, 569 (E.D. Pa. 2005); *see also Cruz ex rel. Alvarez v. City of Phila.*, Civ. A. No. 07-493, 2008 WL 4347529, at *11 (E.D. Pa. Sept. 23, 2008) ("Police officers may, however, be liable for malicious prosecution where the plaintiff can establish that the police officers exerted pressure or influence on the prosecutor to initiate proceedings or made knowing misstatements to the prosecutor."). A police officer can be liable for malicious prosecution if he or she "fails to disclose exculpatory evidence to prosecutors, makes false or misleading reports to the prosecutor, omits material information from the reports, or otherwise interferes with the prosecutor's ability to exercise independent judgment in deciding whether to prosecute." *Zeglen v. Miller*, Civ. A. No. 04-1940, 2008 WL 696940, at *8 (M.D. Pa. Mar. 12, 2008).

Based on the above-stated standards, Strange has failed to state a claim for malicious prosecution. The affidavit of probable cause was signed by Officer Rodriguez. Plaintiff contends that this fact is irrelevant because Officer Swanson provided information to Officer Rodriguez and that this information was the basis for the criminal complaint against Strange. Regardless of who signed the affidavit of probable cause, there is no basis for this Court to conclude that Officer Swanson played a role in bringing charges against Plaintiff. Officer Swanson testified that he completed no paperwork regarding the incident with Strange and did not initiate the prosecution against her. (Swanson Dep. at 73.) Officer Rodriguez bolstered this conclusion when he stated that Officer Swanson had nothing to do with the affidavit of probable cause. (Defs.' Mot. for Summ. J. Ex. H

5

[Rodriguez Dep.] at 52.) After Officer Swanson brought Strange to the police station, she had no further contact with him prior to this litigation. (Strange Dep. at 86.) The Court thus has no basis to conclude that Swanson played any role in bringing charges against Strange or interfered with the prosecutor's ability to decide whether to press charges.

Plaintiff also bases her claim for malicious prosecution on the fact that Officer Swanson arrested her when he handcuffed her and then tasered her. The fact that Strange was arrested, however, is not in dispute. Her arrest, even if inappropriate, is not enough to make out a malicious prosecution claim. False arrest and malicious prosecution are distinct claims. *See Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007) (pointing out that false arrest claim covers damage only for the time of detention until the issuance of process); *see also Montgomery v. DeSimone*, 159 F.3d 120, 128-29 (3d Cir. 1998) (Roth, J., dissenting) ("I conclude that the difference between a false arrest claim, in which a person may have been illegally arrested even though guilty of the prosecuted offense, is very different from a malicious prosecution claim where the propriety of the prosecution itself depends on it being initiated with probable cause.").

Strange cannot make out the first prong of her malicious prosecution claim against Officer Swanson—that Officer Swanson initiated a prosecution against her. "If Plaintiffs have not proffered evidence sufficient to create a triable issue of fact as to all five prongs, their malicious prosecution claim must fail as a matter of law." *Domenech v. City of Phila.*, Civ. A. No. 06-1325, 2009 WL 1109316, at *9 (E.D. Pa. Apr. 23, 2009). Furthermore, because the intentional infliction of emotional distress claim that survived Defendants' motion to dismiss was based on the malicious prosecution claim, this claim for intentional infliction of emotional distress must also be dismissed.

### B. City of Chester

Strange claims that the City of Chester failed to properly train officers "with respect to the constitutional, statutory and department limits of their authority while acting in their capacity of police officers." (Mem. of Law Opposing Defs.' Mot. for Summ. J. at 6.) She also charges that the City of Chester "was on actual notice of the need to train, supervise, discipline or terminate the individual defendant police officers prior to this incident based upon their having engaged in similar activities in the past." (*Id.*)

Before a municipality may be held liable under § 1983 based on a failure to train claim, it must be shown that the municipality's decisions were the "moving force" behind an actual constitutional violation. *Grazier v. City of Phila.*, 328 F.3d 120, 124-25 (3d Cir. 2003) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)); *see also Reitz v. Cnty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997). As the Third Circuit has stated, "[t]o survive summary judgment on a failure to train theory, [Plaintiff] must present evidence that the need for more or different training was so obvious and so likely to lead to the violation of constitutional rights that the policymaker's failure to respond amounts to deliberate indifference." *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001); *see also Reitz*, 125 F.3d at 145. It is insufficient to show merely that a particular officer acted improperly or that better or additional training could have avoided the injury because "[s]uch a claim could be made about almost any encounter resulting in injury" and "adequately trained officers occasionally make mistakes." *City of Canton*, 489 U.S. at 391; *see also Grazier*, 328 F.3d at 125; *Garcia v. Cnty. of Berks*, 155 F. Supp. 2d 259, 268 (E.D. Pa. 2001); *Canty v. City of Phila.*, 99 F. Supp. 2d 576, 581 (E.D. Pa. 2000) (municipal liability for failure to train cannot be "predicated solely upon a showing that a city's employees could have been better trained or that additional

training was available that would have reduced the overall risk of constitutional injury"). This is a difficult standard to meet because "[a] plaintiff pressing a § 1983 claim must identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." *Reitz*, 125 F.3d at 145 (citing *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1030 (3d Cir. 1991)); *see also Garcia*, 155 F. Supp. 2d at 268.

Plaintiff points out that, despite a directive of the City of Chester to the contrary, the officers involved in her arrest failed to report that Officer Swanson used his taser; Officer Swanson also failed to collect and place into evidence the "yellow, pink and colored 'micro-dots' dispersed at the time of cartridge firing." (Mem. of Law Opposing Defs.' Mot. for Summ. J. at 7; Pl.'s Answer to Defs.' Mot. for Summ. J. Ex. C [Taser Directive].)

The failure of officers to follow a directive that they document the use of a taser on an individual does not, standing alone, support a *Monell* claim. Plaintiff has presented evidence that on a specific date, certain officers failed to follow a policy of the City of Chester. A municipality cannot be held liable based solely on its officers acting improperly on a single occasion.

Strange points to no specific training that the City of Chester failed to provide that could have prevented Officer Swanson's use of a taser on Strange. There is no evidence that the City of Chester had a policy, custom, or practice of failing to document taser usage. At most, Strange has provided evidence that on this one occasion, the use of a taser was not documented. Finally, although Plaintiff claims that the City of Chester was aware of similar improper activities by these Defendants in the past, there is no evidence in the record of any such activities. Officer Swanson testified that he was aware of some citizen complaints made against him but there is no indication of the nature of these

complaints in the record. Strange stated that "the Chester Police Department has an ongoing and tolerated policy of allowing their officers to effect arrests with tasers without demanding that their own officers adhere to the city's clearly defined directives." (Mem. of Law Opposing Defs.' Mot. for Summ. J. at 8.) This claim is baseless. There is nothing that suggests an "ongoing and tolerated policy" exists that allows officers to improperly use tasers, and this Court cannot extrapolate to create one based on allegations arising from a single incident.

## IV. CONCLUSION

Strange has failed to present a genuine issue of material fact on her remaining claims against Officer Swanson. She has also failed to raise a *Monell* claim against the City of Chester. Defendants' motion for summary judgment is granted. An Order consistent with this Memorandum will be docketed separately.